[Civ. No. 8706. Second Appellate District, Division Two.—April 29, 1935.]

LAURA M. PHELPS, Respondent, v. A. L. JAMESON & COMPANY (a Corporation) et al., Appellants.

Loeb, Walker & Loeb and Herman F. Selvin for Appellants.

Sherman & Sherman for Respondent.

WILLIS, J., *pro tem.*—Respondent herein commenced this action against A. L. Jameson & Company, a Nevada corporation; A. L. Jameson, Columbia Cement Company, a Nevada corporation; and W. J. Shaw, by filing her complaint on May 15, 1931, charging defendants with fraud and deceit in respect to representations made by defendants individually and as agents of each other, resulting in an exchange of 300 shares of preferred stock of Monolith Midwest Cement Company, owned by respondent and of the reasonable value of $3,000, for 200 shares of preferred and 100 shares of common stock of said Columbia Cement Company, alleging damage in the sum of $3,000 and praying for that amount. The defendant Shaw defaulted and his default was duly entered. Defendants A. L. Jameson & Company and A. L. Jameson filed a joint answer denying all the allegations of the complaint except those relating to residence of the parties and the corporate capacity of the two corporations named as defendants. After trial and submission of the cause the court found that seven out of twelve specifications of representations set forth in the complaint were made to plaintiff by defendants Shaw and Jameson, acting individually and as agents for A. L. Jameson & Company; that the same were false and were made with intent to deceive plaintiff and induce her to make the exchange and that plaintiff believed the same and relied thereon, and as a result thereof made such exchange; "that defendants offered the sale of said Columbia Cement Company stock to the public, and the sale of said 200 shares of the preferred capital stock and the 100 shares of the common capital stock of Columbia Cement Company by the defendants to plaintiff was and is a sale to the public, and that said sale of said stock was made by defendants to plaintiff at a time when the Columbia Cement Company had no permit from the commissioner of corporations of the state of California permitting the sale of said stock to the public"; that said Columbia stock "was and now is of no value whatsoever and the same is void";

"that the issuance and sale of said stock to plaintiff was in violation of the Corporate Securities Act of the State of California and the sale and issuance of said stock was and is void"; that said Monolith stock at the time of exchange had an agreed and reasonable value of $2,624.40. From the facts found, the court concluded that the sale or exchange of the Columbia stock was in violation of the Corporate Securities Act, and that plaintiff had been damaged in the sum of $2,624.40 with interest from November 4, 1929, and was entitled to judgment against defendants A. L. Jameson Company, A. L. Jameson and W. J. Shaw for that amount. Judgment was entered accordingly, from which A. L. Jameson & Company and A. L. Jameson appeal.

Appellants contend that the findings as to damages are not supported by the evidence. ▮ Without question the proper measure of damages to be applied in an action to recover damages resulting from fraudulent representations in a sale or exchange of property is the difference between the actual value of the property purchased or received in exchange and the value it would have had had the property been as represented. (*Divani* v. *Donovan,* 214 Cal. 447, 454 [6 Pac. (2d) 247], and cases therein cited.) ▮ No evidence was given herein nor was any finding made as to the actual value of the Columbia stock at the time of exchange, or the value it would have had had the stock been as represented. But there was evidence which supported the finding that at the time of exchange and delivery of the Columbia stock to plaintiff the Columbia Cement Company had no existing permit to issue or sell its stock to the public. The court also found that the issuance and sale of this stock to plaintiff was a sale to the public and was void, and that the stock was, at the time of exchange and now is, of no value whatsoever. These latter findings, if supported by the evidence, are sufficient, in conjunction with the finding as to lack of a permit, to support the finding of damages in the sum found, in view of the further finding that one of the false representations made was that this Columbia stock was worth $3,000 at the time of exchange. It is obvious that the finding as to the sale of stock here in question was predicated on the assumption or implied finding of the court that the stock sold and delivered to plaintiff was issued and sold by Columbia Cement Company through its selling agents. There is no direct finding that such was the fact, and in the

absence of such direct finding it is necessary to ascertain if there is any evidence to support the implied finding or assumption that the stock sold to plaintiff was treasury stock of the company or stock which required authority of a permit to render it valid upon sale thereof.

We have examined the transcript of the evidence and find no evidence which would support any finding that the stock delivered to plaintiff was treasury stock or stock issued by the company under any offer of sale to the public. The undisputed evidence reveals the fact that the two certificates of stock issued and delivered to plaintiff in performance of this contract of exchange, and being the stock sold by defendant Shaw to plaintiff, were reissues from surrendered certificates of stock issued some years before to one Fred A. Ballin in the state of Nevada, and which he had contracted to sell to Shaw. In short, the stock sold to plaintiff was part of a block of privately-owned stock, presumably legally issued under the laws of the state of Nevada to Ballin and which the latter had delivered to Shaw for sale under a contract. This stock was entirely separate and apart from the treasury stock of the company which was for a time covered by a permit authorizing its sale to the public in California but which permit stood suspended at the time this exchange was made. As there was undisputed evidence that the stock actually sold and delivered was privately-owned stock, sold or exchanged in an individual transaction, the finding that the sale was one made to the public without a permit is entirely lacking in support, and the conclusion or finding that such sale was void and the stock therefore valueless falls for lack of support in the evidence or in the findings of facts. This makes it quite patent that failure to find the actual value of the stock at the time of exchange, and the value it would have had had the stock been as represented, leaves the finding of damages entirely unsupported. "It is elemental that proof of damage is necessary to establish a cause of action for fraud." (*Dyer* v. *Hunter,* 133 Cal. App. 267 [23 Pac. (2d) 1049].)

 In 1929, by an amendment to section 2 of the Corporate Securities Act of 1917, effective on August 14, 1929, it was provided as follows: "(c) Except as hereinafter expressly provided, the provisions of this act shall not apply to the sale of any security in any of the following transactions: .. (3) The sale in a *bona fide* way of any security

by an owner who is not the issuer or an underwriter thereof, who sells the same for his own account, and not for the purpose of evading the provisions of this act.'' The evidence herein shows without substantial conflict that the stock sold to plaintiff was owned by Fred A. Ballin, who was not the issuer thereof, and under option contract to defendant Shaw, that neither Shaw nor A. L. Jameson & Company nor A. L. Jameson was an underwriter thereof. There was evidence that A. L. Jameson & Company had underwritten an entirely different block of stock which had been subscribed for by James Sayers, C. Thoms and F. J. Thoms, and for the sale of which to the public a permit of the corporation commissioner had been issued but stood suspended at the date of the sale to plaintiff.

For the defect in the findings and the consequent lack of support for the judgment, the judgment must be reversed and it is so ordered.

Crail, J., and Stephens, P. J., concurred.