ALLSTATE INSURANCE COMPANY,
Appellant,

v.

R.S.I. RESTORATION SERVICES,
INC., Respondent,

Commissioner of Commerce, Respondent.

No. C6–96–387.

Court of Appeals of Minnesota.

Aug. 13, 1996.

Considered and decided by SHORT, P.J., and SCHUMACHER and SCHULTZ*, JJ.

## OPINION

SCHUMACHER, Judge.

Allstate Insurance Company appeals the district court's special proceedings order dismissing its claim for payment from the state contractors' recovery fund, arguing that the court erred in its conclusion that Minn.Stat. § 326.975 (1994 & Supp.1995) does not allow a subrogee of an owner or lessee of residential property to recover from the fund. We affirm.

## FACTS

Tyrone and Mila Bucey's home was damaged by fire, and they submitted a claim to Allstate, their homeowner's insurer. Allstate suggested that respondent R.S.I. Restoration Services, Inc., perform the repair work. R.S.I. submitted an estimate of $127,718.29.

The Buceys decided to tear down the damaged structure and build a new home. Allstate agreed to pay $127,718.29 toward the rebuilding. R.S.I. contracted with the Buceys to construct the new home for $225,000. The Buceys and TCF Mortgage advanced $109,000 to R.S.I. as the construction progressed. The project stalled, however, because R.S.I. was not paying its subcontractors. The Buceys then decided to have another contractor complete the project.

Of the $109,000 advanced, R.S.I. could only account for $46,915.12 in payments to subcontractors and suppliers. The Buceys sought and received the remaining $62,084.88 from Allstate under a marketing program of Allstate called the "Homeowners Workmanship Guarantee" (the guarantee program). The guarantee program provides:

Allstate guarantees that the workmanship of the repairs listed on the attached estimate or subsequently authorized by Allstate and as performed by [blank] will be of the quality generally accepted in the home repair business. The limit of Allstate's obligation under this guarantee will be to remedy for the homeowner any departures from such standard for up to one year from the date of completion of the repairs.

Allstate has provided you with the name of the repair firm above and this guarantee in accordance with its policy of rendering service to customers. This guarantee applies only to the repair firm named above.

In exchange for the payment from Allstate, the Buceys executed a full and final release and assigned to Allstate

by way of subrogation or otherwise all rights, claims or causes of action which the undersigned have, or may have, to the extent of said payments for the above-referred to loss, damage or payments under the aforesaid Quality Vendor Program, the aforesaid Allstate Home Repair Guarantee, the aforesaid Homeowners Workmanship Guarantee * * *.

Allstate, as the Buceys' subrogee, then pursued R.S.I. R.S.I. confessed judgment in the amount of $62,084.88 and agreed to a payment schedule. R.S.I. defaulted after making four payments, leaving a balance due of $41,389.92.

Efforts to collect from R.S.I. failed. Allstate moved for an order seeking payment from the contractors' recovery fund. Licensing fees from building contractors and remodelers provide the fund's money. Literature from the state Department of Commerce describes the fund as a way

to provide reimbursement to a consumer who has suffered a financial loss as a result of a licensed residential building contractor or residential remodeler who has engaged in fraudulent, deceptive or dishonest practices, converted funds or failed to perform.

Respondent Commissioner of Commerce (the Commissioner) moved for dismissal of the application. The district court granted the Commissioner's motion, concluding that Allstate's "subrogation claim is not authorized within the plain meaning of the statute."

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUE

Does Minn.Stat. § 326.975 allow a subrogee of an owner or lessee of residential property to recover from the contractors' recovery fund?

## ANALYSIS

■ The construction of a statute is a question of law and thus fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985). Whether there is a right of subrogation is also a question of law. *Fire Ins. Exch. v. Adamson Motors,* 514 N.W.2d 807, 809 (Minn.App. 1994).

■ Allstate argues that as the Buceys' subrogee, it stands in the shoes of the Buceys and may recover from the contractors' recovery fund to the same extent that the Buceys could have. Limiting our analysis to Minn.Stat. § 326.975 (1994 & Supp.1995), we disagree.

The contractors' recovery fund provides:

[T]he sole purpose of this fund is to compensate any aggrieved owner or lessee of residential property who obtains a final judgment in any court of competent jurisdiction against a licensee licensed under section 326.84 * * *.

Minn.Stat. § 326.975, subd. 1(a)(2) (Supp. 1995). An "owner" is "a person who has any legal or equitable interest in real property." Minn.Stat. § 326.83, subd. 11 (1994). " 'Lessee' means one who rents residential real estate pursuant to a written lease agreement of at least one year's duration." Minn.Stat. § 326.83, subd. 6 (1994). The district court correctly found that because the statute explicitly states that its "sole purpose" is to compensate "aggrieved owner[s] and lessee[s]," its plain meaning does not authorize Allstate's subrogation claim.

■ This case involves "conventional subrogation," rather than "equitable subrogation," because the claimed right to subrogation is based on an agreement between the parties. *See Westendorf by Westendorf v. Stasson,* 330 N.W.2d 699, 703 (Minn.1983) (explaining conventional subrogation). But even when subrogation arises by virtue of an agreement,

the terms of the subrogation will * * * be governed by equitable principles, unless the agreement clearly and explicitly provides to the contrary.

*Id.; see also Share Health Plan v. Marcotte,* 495 N.W.2d 1, 5 (Minn.App.1993) ("As a general rule, equitable considerations apply to all forms of subrogation."), *review denied* (Minn. Mar. 30, 1993). Here, equitable considerations do not favor Allstate's claimed right to subrogation. This is not a case in which an insurer seeks a right of subrogation against a third-party tortfeasor. *Cf. Wandersee v. Brellenthin Chevrolet Co.,* 258 Minn. 19, 27–29, 102 N.W.2d 514, 520–21 (1960) (despite fact that statute allowing employer to be reimbursed for payments made under worker's compensation does not explicitly grant subrogation rights to employer's insurer, insurer succeeded to subrogation right against third-party tortfeasor). Instead, Allstate seeks to collect from a state fund that is neither a tortfeasor nor directly liable to the Buceys or Allstate. *See Moe v. Centurion Inv. Co.,* 293 N.W.2d 826, 830 (Minn.1980) (noting in case involving state real estate education, research and recovery fund that " '[t]he allowance of any recovery * * * from the state is a matter of legislative beneficence' " and " '[t]here is no constitutional or common law liability of the state' " (quoting *Shirai v. Karpe,* 57 Cal.App.3d 276, 127 Cal. Rptr. 549, 551 (1976))). As noted by the district court, Minn.Stat. § 326.975, subd. 1(a)(3) (Supp.1995) limits the amount payable by the fund to $50,000 per licensee. Thus, if a $41,389.92 payment were ordered to Allstate, R.S.I.'s allotted share in the fund would be nearly depleted and other true owners or lessees damaged by R.S.I.'s conduct might not be compensated sufficiently.

Furthermore, the statute contemplates that owners and lessees will be compensated for losses "arising directly out of any transaction" that took place while the contractor

was licensed. Minn.Stat. § 326.975, subd. 1(a)(2) (Supp.1995) (emphasis added). Here, any claim against the fund by Allstate does not arise directly from the transaction between the Buceys and R.S.I. Instead, it resulted either from Allstate's obligation under its guarantee program or from Allstate's decision to pay a claim that may not be covered under the policy.

## DECISION

Minn.Stat. § 326.975 does not allow Allstate, as the Buceys' subrogee, to recover from the contractors' recovery fund.

**Affirmed.**